UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

CAROLYN ABDELKHALEQ,                )
                                    )      CASE NO. 5:07 CV 3585
                                    )
              Plaintiff,            )
                                    )
        vs.                         )      MAGISTRATE JUDGE McHARGH
                                    )
                                    )
PRECISION DOOR OF AKRON,            )
                                    )      **MEMORANDUM AND ORDER**
                                    )
              Defendant.            )


## I.  FACTS AND BACKGROUND

Plaintiff brings this action pursuant to the Fair Labor Standards Act, 29 U.S.C.A. § 201 et

seq.  Plaintiff is a former employee of Defendant.  Defendant Precision Door of Akron is a franchise

operation that is in the business of installing and repairing automatic garage doors.  (Doc. 33, at 2;

Defendant's Exhibit 4 [hereinafter, "Lybrook Dep."], at 5).

Plaintiff began employment as a customer service representative for Defendant on or about

March 9, 2005.  (Doc. 28, at 3; Plaintiff's Exhibit A [hereinafter, "Abdelkhaleq Dep."], at 10-11).

Plaintiff's duties included handling incoming calls from customers.  (Doc. 28, at 3; Abdelkhaleq

Dep., at 10).  George Lybrook is the owner of the franchise where Plaintiff worked, and Margo

Smith was the office manager and Plaintiff's immediate supervisor.  (Defendant's Exhibit 2

[hereinafter, "Lybrook Aff."], at ¶ 1; Defendant's Exhibit 3 [hereinafter, "Smith Aff."], at ¶¶ 1-2).

1

Vickey Todd also worked in the office with Plaintiff. (Doc. 28, at 3-4; Abdelkhaleq Dep., at 10-11). At the beginning of her employment, Plaintiff earned ten dollars per hour.  (Abdelkhaleq Dep., at 10).  After approximately one month, Plaintiff received a fifty-cent per hour wage increase. (Abdelkhaleq Dep., at 10-11).  Plaintiff worked a forty-hour week in the office.  (Abdelkhaleq Dep., at 12).

Throughout Plaintiff's employment, Defendant used a roll-over call system to deal with customer inquiries after regular business hours and on weekends.  (Doc. 33, at 2; Abdelkhaleq Dep., at 23-24).  The following represents Plaintiff's description of how the roll-over call system operated during her tenure.  At the close of the work day, an office employee would call a number from Defendant's office, which would transfer all incoming calls to a paging system. (Abdelkhaleq Dep., at 24).  When a customer called thereafter, the call would be forwarded to the paging company, and the paging company would transmit information from the call to a pager belonging to Defendant. *See* Abdelkhaleq Dep., at 25.  Information from the incoming call included the customer's name, telephone number, and in some cases, the customer's address and/or a short description of the customer's issue.  (Doc. 28, at 4; Abdelkhaleq Dep., at 25).  After receiving the page, the employee monitoring the pager would be required to return the customer's call, usually within five to ten minutes.  (Abdelkhaleq Dep., at 26).

Often the customer's issue would require the employee to contact a technician to schedule an emergency repair for that night or the following day.  (Abdelkhaleq Dep., at 15-18, 26-27). Information about the technicians and their schedules was available on company computer software. (Abdelkhaleq Dep., at 33-35; Plaintiff's Exhibit B [hereinafter, "Vickey Todd Aff."], at ¶ 8).  Once the employee had successfully contacted a technician and arranged a time with him to meet the

customer, the employee would call the customer again to notify the customer of the appointment time.  (Abdelkhaleq Dep., at 17; Vickey Todd Aff., at ¶ 7).   The employee then would enter notes into the computer program to allow future users to access information about the service call. (Abdelkhaleq Dep., at 46; Vickey Todd Aff., at ¶ 7).  Defendant mandated that one of its employees monitor the pager at all times after hours.  (Abdelkhaleq Dep., at 52).

At some point during her employment, Plaintiff began to monitor the cell phone and pager after hours and on weekends.  (Doc. 28, at 4; Abdelkhaleq Dep., at 14).  Defendant asserts that Plaintiff did not begin monitoring the pager until August 2005, approximately four to five months after the commencement of her employment with Defendant.  (Doc. 33, at 2; Lybrook Aff., at ¶ 5). The parties dispute who approached whom about taking the pager.  Plaintiff claims that Mr. Lybrook and Ms. Smith called Plaintiff into the main warehouse to ask if she "would be interested in working with the pager."  (Doc. 28, at 4; Abdelkhaleq Dep., at 14).  Defendant claims that Plaintiff came to Defendant "wanting to make some extra money and asked if she could have the pager." (Doc. 33, at 2; Lybrook Dep., at 16-17).

Plaintiff claims that Vickey Todd previously had been responsible for monitoring the pager, but she had "quit using the pager and refused to use it again after that."  (Abdelkhaleq Dep., at 15). Plaintiff testified that she expressed an interest in the pager when approached about it but made clear at that time that she only wanted to monitor the pager a few nights per week so that she could spend time with her ailing father.  (Doc. 28, at 4; Abdelkhaleq Dep., at 15).  It is undisputed that Plaintiff was paid ten dollars per night for each weekday night and twenty-five dollars for each weekend day that she monitored the pager.  (Doc. 28, at 9; Abdelkhaleq Dep., at 49, 60, 71; doc. 33, at 2-3; Smith Aff., at ¶ 5).

3

Plaintiff contends that despite her desire only to monitor the pager a few times per week, she soon began having to take the pager on a near-daily basis.  (Abdelkhaleq Dep., at 28-29).  Plaintiff asserts that although she occasionally was able to give the pager to someone else, she often was told that she had to take it because no one else was available or willing.  (Abdelkhaleq Dep., at 54).  She felt that monitoring the pager had become a requirement of her job and that she could have been terminated for permanently refusing to take the pager, although no one explicitly so told her.  (Abdelkhaleq Dep., at 21-22, 29-30).  Defendant claims that monitoring the pager was completely voluntary and that Plaintiff was free to forego monitoring the pager at any time.  (Lybrook Aff., at ¶¶ 7, 12).  Three current employees of Defendant who have monitored the pager swore in affidavits that monitoring the pager is completely voluntary.  (Defendant's Exhibits 5, 6 and 7 [hereinafter, "Wright Aff.," "Summerville Aff.," and "Reynolds Aff."], at ¶¶ 2, 5-6).  Defendant also notes that during the period in which Plaintiff monitored the pager "there were days during the week in which someone else monitored, and there were eleven full weeks within these months where Plaintiff did not monitor the pager at all."  (Doc. 33, at 3; Defendant's Exhibit 1 [hereinafter "Pager Table"]; Lybrook Aff., at ¶¶ 9-10; Smith Aff., at ¶¶ 7, 9-10).

According to Plaintiff, the process for dealing with after-hours customer pages many times involved a great deal of communication back and forth with the customer and technician, and that each service call, from start to finish, could take as little as thirty minutes or as much as two hours to complete.  (Vickey Todd Aff., at ¶¶ 4, 7; Abdelkhaleq Dep., at 28, 58).  Defendant claims that this process normally took fewer than three minutes per service call.  (Doc. 33, at 3).  Defendant bases this assertion on an "examplar" of a service call played during Plaintiff's deposition.  *See* id; Abdelkhaleq Dep., at 42-45.

4

Plaintiff also claims that monitoring the pager severely restricted her ability to engage in personal pursuits. Plaintiff cites a couple of examples in support of this assertion. In one example, Plaintiff claims that she had to spend over two hours dealing with a particular call because she had difficulty reaching the on-duty technician and, upon reaching him, discovered that he was "under the influence." (Abdelkhaleq Dep., at 28). In another example, Plaintiff claims that she was forced to leave the park one afternoon with her daughter because the office had closed and she needed to return home before the calls started. (Abdelkhaleq Dep., at 50-51). Plaintiff claims that she could not deal with the calls efficiently unless she was at home because the technicians' schedules were available only through the company software, accessible on her home computer. (Abdelkhaleq Dep., at 33-36). However, Plaintiff also testified that if she were away from home upon receiving a page, she could call Ms. Smith, who also had access to the company software on her home computer and, if she were at home, could help Plaintiff find a technician. (Abdelkhaleq Dep., at 34-35). Plaintiff also noted that the pager was not restricted to any particular geographical range and that it would work reliably anywhere she went. (Abdelkhaleq Dep., at 32).

Defendant disputes that the pager forced employees such as Plaintiff to remain at their homes during on-call hours. According to Defendant, Plaintiff admits in her deposition that she was able to, among other things, participate in family functions, shop and visit while monitoring the pager, and to service calls from her car. (Doc. 33, at 5 (citing Abdelkhaleq Dep., at 32-33 50, 52, 54)). Three of Defendant's current employees who have monitored the pager swore in affidavits that they are not restricted to their homes while monitoring the pager and that they are able to engage in a variety of activities while doing so. *See* Wright Aff., at ¶¶ 4, 7-8; Summerville Aff., at ¶¶ 4, 7-8; Reynolds Aff., at ¶¶ 4, 7-8. One of these employees, Kimberly Wright, states that she is able to

monitor the pager while working at a second job.  (Wright Aff., at ¶ 7).  Another employee, Nicole Summerville, states that she monitors the pager while tending to her infant child, and that the pager has never prevented her from fully caring for her child.  (Summerville Aff., at ¶ 7). Another employee, Jennessa Reynolds, states that she is able to take the pager with her to class after work hours.  (Reynolds Aff., at ¶ 7).

Defendant terminated Plaintiff in March of 2006.  (Doc. 33, at 3; Abdelkhaleq Dep., at 12). Defendant claims that Plaintiff was terminated because of attendance problems.  Plaintiff admits that she was not terminated for refusing to take the pager.  (Abdelkhaleq Dep., at 53).

Plaintiff moved for summary judgment, claiming that she is entitled to compensation for all time spent on-call, or in the alternative, for the actual time spent handling customer calls after hours and on weekends.[1]  For the following reasons, the court DENIES Plaintiff's motion for summary judgment.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the entire record "shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the burden of showing the absence of any such genuine issues of material facts; specifically

> a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact.

---

[1]Plaintiff also claims that she is entitled to liquidated damages and attorney's fees pursuant to 29 U.S.C.A. § 216(b).  However, because the court must deny Plaintiff's motion for summary judgment, the court declines to address these claims at this juncture.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is "material" only if its resolution might affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Once the moving party has satisfied its burden of proof, the burden then shifts to the non-moving party pursuant to Federal Rule of Civil Procedure 56(e), which states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

In ruling on a motion for summary judgment, the court must construe the evidence, as well as any inferences to be drawn from it, in the light most favorable to the party opposing the motion. *See Kraus v. Sobel Corrugated Containers, Inc.*, 915 F.2d 227, 229 (6th Cir. 1990). The court also must determine "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one sided that one party must, as a matter of law, prevail over the other." *Anderson*, 447 U.S. at 249. In reaching such a determination, however, the court is not to decide disputed questions of fact, but only to determine whether genuine issues of fact exist. *Id.* at 248-49. Moreover, the "trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Circuit 1988).

The Supreme Court has held "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

### III.  LAW AND ANALYSIS

### A. Time Spent "On-Call"

Plaintiff first claims that she is entitled to compensation under the overtime provisions of the Fair Labor Standards Act ("FLSA") for all her time spent on-call monitoring the pager.  The FLSA provides that an employee must receive compensation at "not less than one and one-half times the regular rate at which he is paid" for hours worked in excess of forty per week.  29 U.S.C. § 207(a)(1).  The FLSA does not specify whether time spent "on-call" constitutes time spent working, but the Supreme Court has held that such time is compensable in some cases.  See *Armour & Co. v. Wantock*, 323 U.S. 126, 133, 65 S.Ct. 165 (1944); *Skidmore v. Swift & Co.*, 323 U.S. 134, 136, 65 S.Ct. 161 (1944).  The Supreme Court declined to create a bright line rule in *Armour* and *Skidmore*; rather, it held in both those cases that whether or not time spent on-call constitutes working time depends on whether the employee's time is spent predominantly for the employer's benefit or for the employee's benefit, and the answer to this question depends on all the circumstances of the case.

Although the plaintiffs in *Armour* and *Skidmore* were required to spend their on-call time on their employers' premises, the Sixth Circuit has stated that "an employee may be entitled to compensation even though he or she is on call at home or elsewhere."  *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 609 (6th Cir. 1992).  The *Martin* court held that "on-call time spent at home may be compensable if the restrictions imposed are so onerous as to prevent employees from effectively using the time for personal pursuits."  *Id.* at 611.  The fact that time spent on-call may have affected a plaintiff's ability to engage in some activities is not enough to establish that such time is compensable.  *Id.*  As suggested above, whether an employee is entitled to compensation for

8

on-call time under the FLSA is a highly fact-specific inquiry.

Plaintiff argues that the facts of this case are virtually identical to those from an out-of-circuit case, *Pabst v. Oklahoma Gas & Elec. Co.*, 228 F.3d 1128 (10th Cir. 2000), in which the Tenth Circuit upheld the lower court's determination that the plaintiffs' time spent on-call was compensable. In *Pabst*, the plaintiffs were technicians who monitored alarms in several of the defendant's buildings. *Id.* at 1130. The plaintiffs were on-call from 4:30 p.m. to 7:30 a.m. on week-nights and twenty-four hours a day on weekends. *Id.* If an alarm went off during these hours, it would go to computers at some of the plaintiffs' homes and to pagers in the possession of all the plaintiffs. *Id.* However, because the pagers were only about 70% reliable and because the plaintiffs were required to respond to the alarms within ten to fifteen minutes, the plaintiffs were required to remain at or near their homes during on-call hours. *Id.* The plaintiffs received an average of three to five alarms per night, and it took an average of forty-five minutes to respond to each alarm. *Id.* Sometimes, the alarms would require the plaintiffs to report to the office, but the plaintiffs could service many of the alarms from home. *Id.* The plaintiffs testified that they rarely got more than five hours of uninterrupted sleep on any given night. *Id.*

Plaintiff argues that the facts of this case closely resemble those in *Pabst* because Plaintiff "was required to monitor a pager at home, call within ten minutes (fifteen in *Pabst*), and spend, on average, forty-five minutes a call." (Doc. 28, at 8). Plaintiff claims that because of these restrictions, she "could not leave her home, and therefore[,] could not perform normal activities such as go to the movies, shop, play in the park with her daughter, or even visit her terminally ill father." Id. According to Plaintiff, these purported factual similarities mandate that the court find her on-call time to be compensable.

9

Defendant disputes that monitoring the pager imposed such onerous restrictions on Plaintiff's life. Defendant claims that Plaintiff's own deposition shows that Plaintiff's "monitoring of the pager was voluntary and not required; . . . that Plaintiff participated in family functions, went about her daily routine, shopped, visited, and maintained her life all while monitoring the pager;" that it was not necessary for Plaintiff to return the customer's call immediately; and that she could service calls from her car.  (Doc. 33, at 5).  Defendant also points to the sworn statements of Mr. Lybrook, Ms. Smith, and three of its other current employees – Ms. Wright, Ms. Summerville, and Ms. Reynolds – as evidence that employees such as Plaintiff have been able to engage in a wide variety of personal pursuits while monitoring the pager.

Taking the facts of this case in a light most favorable to Defendant, the court finds that there are genuine issues of material fact as to whether the restrictions imposed on Plaintiff while monitoring the pager were "so onerous as to prevent [her] from effectively using the time for personal pursuits." See *Martin*, 968 F.2d at 611.  Although Plaintiff claims that she was unable to use her time monitoring the pager effectively for personal pursuits, the sworn statements of Ms. Wright, Ms. Summerville, and Ms. Reynolds suggest otherwise.  These current employees state that they are able, respectively, to work at a second job, to care for a child, and to attend classes in the evening while on-call suggest that employees are able to spend their time monitoring the pager primarily for their own and not for Defendant's benefit.  Plaintiff argues that the statements in these affidavits are largely irrelevant to this case because they fail to address Plaintiff's work for Defendant and merely describe Defendant's current pager-monitoring arrangement with those employees.  (Doc. 36, at 3).  However, there is no evidence suggesting that anything about the after-hours paging system – including the general process for dealing with after-hours customer pages, the requirement

10

that someone monitor the pager at all times, or the fact that technicians' schedules are available only on a computer software program – has changed since Plaintiff's termination.  Thus, although these statements do not implicate Plaintiff directly, they suggest that the level of restriction imposed by the paging system – as it existed then and, for purposes of this motion, exists now – on an employee's life is not as onerous as Plaintiff suggests.

Plaintiff also makes much of the purported fact that she was forced to remain at home during her on-call time.  She states, "[d]ue to these restrictions, [she] could not leave her home, and therefore could not perform normal activities . . . ."  However, the court finds that there are issues of fact precluding a finding in Plaintiff's favor on this point.  First, it is not entirely clear that Plaintiff in fact was unable to leave her home while monitoring the pager.  In this case, it is undisputed that calls were forwarded to a paging system after-hours, rather than Plaintiff's home.  Plaintiff also admits that the pager was not restricted to any particular geographic range, and she does not claim that the pager was unreliable, unlike those at issue in *Pabst*.  *See* Abdelkhaleq Dep., at 32.  Although Plaintiff stated that she could not remain away from home for very long while on-call because the technicians' schedules were accessible only on her home computer, she also stated that she sometimes could contact Ms. Smith to obtain the technicians' schedules.  Plaintiff further admits in her deposition that she could leave her home – though she could travel only short distances – and that she could service calls from her car – though "not in an efficient manner."  (Abdelkhaleq Dep., at 33-36).  These admissions, especially when viewed in a light most favorable to Defendant, to some extent undercut Plaintiff's claim that she "could not leave her home."  Additionally, Ms. Wright, Ms. Summerville, and Ms. Reynolds each stated that they had never been forced to stay home while monitoring the pager.  *See* Wright Aff., at ¶ 8; Summerville Aff., at ¶ 8; Reynolds Aff.,

11

at ¶ 8.  Accordingly, the court finds that the record contains sufficient evidence to suggest that the pager allowed Plaintiff some flexibility to leave her home, at least some of the time.

Second, even if Plaintiff's on-call duties did force her to remain at home, it does not necessarily follow that Plaintiff was restricted from engaging primarily in personal pursuits during her on-call time.   For example, in *Rutlin v. Prime Succession, Inc.*, 220 F.3d 737, 744 (6th Cir. 2000), the plaintiff, a funeral home employee, contended that he was expected to remain at home while on-call in order to answer phone calls that were forwarded from the funeral home to his house after-hours.  The plaintiff claimed that he received approximately fifteen to twenty calls per night and that he spent an average of one hour per night dealing with these calls.  *Id.*  He argued that his time spent on-call was compensable under the FLSA because the on-call duties prevented him from drinking alcohol, visiting his children or boating, and because they disrupted his meals, evening activities, and sleep.  *Id.*  However, the defendant argued – and the court agreed – that the plaintiff was free to use his on-call time for personal pursuits, despite the plaintiff's purported inability to engage in some activities while on-call.  *Id.*

Similarly, in this case, Plaintiff claims that because she was not able to leave her home she was not able to engage many normal activities she would otherwise like to do, such as go to the park or to the movies.  However, the fact that a person's on-call duties impact some of his or her activities does not mean that the person's time spent on-call is compensable.  *Martin*, 968 F.2d at 611.  Merely having to remain at home would not, in and of itself, prevent Plaintiff from engaging in a variety of personal pursuits, including spending time with her daughter, cleaning house, or reading – to name only a few potential examples.  Thus, the court finds that issues of material fact remain as to whether Plaintiff's mere inability to leave home – to the extent such inability even existed – precluded

12

Plaintiff from spending her on-call time primarily for her own purposes.

Defendant also claims that monitoring the pager is completely voluntary and that Plaintiff was free to forego monitoring the pager at any time. Plaintiff argues, first, that monitoring the pager was not voluntary – *see* doc. 28, at 6 – and second, that whether or not monitoring the pager was voluntary is not material because Plaintiff is entitled to compensation for all the overtime she worked, regardless of whether or not she wanted to work those hours – *see* doc. 36, at 2-3. However, whether Plaintiff could voluntarily forego monitoring the pager – and especially the degree to which she was able to do so – is material because this factor helps illustrate how severely the on-call arrangement restricted Plaintiff's personal life. Defendant presents as evidence in opposition to Plaintiff's claim that monitoring the pager was not voluntary Mr. Lybrook's and Ms. Smith's affidavits, which state that there were several weeks during which Plaintiff monitored the pager for less than a full week and fully eleven weeks during which other employees monitored the pager (Doc. 33, at 3; Lybrook Aff., at ¶¶ 9-11; Smith Aff., at ¶¶ 7, 9-11).[2] Plaintiff further admits in her

---

[2] Defendant also produces in opposition to Plaintiff's motion a chart purportedly showing the number of days per week during each pay period that Plaintiff monitored the pager. (Doc. 33, at 3; Pager Chart). Plaintiff argues that the chart is an inadmissible, unauthenticated document and that the court, therefore, cannot consider it as evidence in opposition to Plaintiff's motion for summary judgment. (Doc. 36, at 3). Plaintiff is correct that a court may not consider unauthenticated documents when ruling on a motion for summary judgment. *See Fiordalisi v. Zubek*, 342 F.Supp.2d 737, 741 (N.D. Ohio 2004) (citing *Saleh v. City of Warren*, 86 Fed. Appx. 866, 868 (6th Cir. 2004)); *see also Alexander v. CareSource*, – F.3d – , 2009 WL 2475355 at *4 (6th Cir. 2009) (reaffirming that unauthenticated documents do not comply with Rule 56(e)). Plaintiff also is correct that this chart has not been authenticated. *See Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 532 n. 5 (6th Cir. 2002) (indicating that a document that was unaccompanied by an affidavit or other document attesting to the document's validity or authenticity did not comply with Rule 56(e)). Thus, the court will not consider the chart in ruling on Plaintiff's motion.

However, to the extent Mr. Lybrook and Ms. Smith attest in their affidavits to information that also is contained within the chart, the court will consider such evidence. Significantly, Plaintiff does not object to these affidavits. Additionally, since Mr. Lybrook is the

deposition that, although she felt that the pager had become a requirement of her job and was primarily her responsibility, she sometimes was able to get other employees to take the pager if gave prior notice that she had alternative plans on a particular evening or weekend.  (Abdelkhaleq Dep., at 22, 54, 57-58).  Plaintiff's testimony is unclear as to how often Plaintiff attempted to get others to monitor the pager and how often she was unsuccessful in doing so.  Additionally, the affidavits of current employees, Ms. Wright, Ms. Summerville, and Ms. Reynolds state that monitoring the pager is voluntary and that they are able to stop doing it at any time.  *See* Wright Aff., at ¶¶ 2, 6; Summerville Aff., at ¶¶ 2, 6; Reynolds Aff., at ¶¶ 2, 6.  Taking the facts in the light most favorable to Defendant, the court finds that there is a genuine dispute as to whether or not Plaintiff's monitoring of the pager was voluntary, and this factor also weighs against summary judgment in Plaintiff's favor.

While the evidence Plaintiff has presented may be sufficient to *create* a genuine issue of material fact as to whether or not Plaintiff is entitled to compensation for her time spent on-call, it is Plaintiff's burden to show that there is *no* genuine issue of material fact and that she is entitled to judgment as a matter of law.  Defendant has presented evidence sufficient to show that there is a genuine issue dispute as to whether Plaintiff's time spent on-call was primarily for her benefit or for Defendant's.  Accordingly, the court must DENY Plaintiff's motion for summary judgment on the issue of whether her time spent on-call is compensable under the FLSA.

---

owner and operator of Defendant and Ms. Smith is its office manager, it is reasonable for the court to infer that both Mr. Lybrook and Ms. Smith have personal knowledge of facts pertaining to their business, including whether monitoring the pager was voluntary, and how often certain employees – including Plaintiff – monitored the pager.  *See Reddy v. Good Samaritan Hosp. & Health Ctr.*, 137 F.Supp.2d 948, 956 (S.D. Ohio 2000) ("Although the affidavit, ideally, will expressly state the basis for the facts, in some instances, personal knowledge may be inferred from the content of the statements.").

## B. Actual Time Spent Servicing Calls

Plaintiff argues, in the alternative, that she is entitled to compensation for her time actually spent responding to the pages she received after-hours and on weekends.  Plaintiff claims that "[t]he evidence establishes that [she] answered anywhere from a couple of calls per night to ten or more," and that "[e]ach call took anywhere from half an hour to two hours to complete."  (Doc. 28, at 8-9).  Plaintiff argues that this evidence shows that she worked "anywhere from one hour per night to several hours."  Id. at 9.  Under the FLSA, Plaintiff should receive one and a half times her normal hourly rate of ten dollars per hour for any overtime hours worked.[3]  Therefore, "at the very low end," Plaintiff claims she worked one hour per night and should have been entitled to fifteen dollars, and "on the high end, answering ten calls per night, she would have worked seven and one half hours and should have been paid one hundred twelve dollars and fifteen cents."[4]  Plaintiff claims that, based on this evidence, she clearly "did not receive her full overtime wages for even the slowest night."  Id.  Plaintiff also suggests that the court could use an average to determine how much overtime compensation Plaintiff deserves; specifically, Plaintiff states that if she averaged four calls per night and forty-five minutes per call, she should have been paid forty-five dollars per night in overtime.  Id.  Defendant does not specifically refute any of these claims.

The court agrees that Plaintiff is entitled to overtime compensation at one and a half times her normal hourly rate for the time she actually spent dealing with each after-hours page.  The time

---

[3]Plaintiff uses her starting pay rate of ten dollars per hour for all of her calculations, so the court also will use that rate of pay as a benchmark in its discussion where applicable.  However, the court notes Plaintiff's testimony that she received a pay raise of fifty cents per hour after approximately thirty days of employment, thereby raising her wages to $10.50 per hour.

[4]Seven and a half hours at fifteen dollars per hour actually is one hundred twelve dollars and *fifty* cents.

Plaintiff spent servicing these calls was "not typical on-call time," but rather time spent primarily for the benefit of Defendant.  *See Rutlin*, 220 F.3d at 744 (holding that time spent by a funeral director dealing with after-hours phone calls was actual working time, primarily for the benefit of the funeral home, and therefore compensable under the FLSA).  Significantly, Defendant does not dispute Plaintiff's assertion that she was an hourly employee, subject to the overtime provisions of the FLSA, or her testimony that she worked a forty-hour week in the office.  Any time Plaintiff spent answering pages during her on-call time, therefore, would constitute time worked in excess of forty hours per week.  However, the mere fact that Plaintiff is entitled to overtime compensation for her time spent answering pages does not answer the question of *how much* time Plaintiff spent answering after-hours pages – a fact that must be known before it can be determined how much, if any, overtime compensation Defendant owes Plaintiff.[5]

Plaintiff urges in her reply that she is entitled to a presumption that her evidence of the number of hours she worked while on-call is correct because Defendant has failed to produce any time records from Plaintiff's employment.  *See* doc. 36, at 4.  According to Plaintiff, because it is Defendant's burden to maintain records of the hours its employees work and because Defendant has failed to produce such evidence in this case, Plaintiff's testimony and the affidavit of Vickey Todd constitute "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  (Doc. 36, at 3-4).

---

[5]The parties have not briefed the issue of whether the compensation Plaintiff actually received for servicing calls after hours and on weekends – i.e., ten dollars per weeknight and twenty-five dollars per weekend day – is creditable against any overtime pay she is owed. Because the court finds that it cannot determine at this juncture the amount of time Plaintiff spent servicing calls – or, for that matter, whether Plaintiff's time spent on call is compensable under the FLSA – the court need not address this issue at this time.

An employer is required to make, keep, and preserve records of the hours its employees work pursuant to Section 11 of the FLSA, 29 U.S.C.A. § 211(c).  In *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) (superceded by statute on other grounds), the Supreme Court outlined how to allocate properly the burden of proof regarding the number of hours an employee has worked in cases where an employer has not kept adequate records:

> [W]here the employer's records are inaccurate or inadequate . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.  The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.  If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

It is undisputed in this case that Defendant did not keep records of the time Plaintiff spent answering pages while on call.  Rather, Plaintiff was paid the flat rate of ten dollars per week night and twenty-five dollars per weekend day for monitoring the pager, regardless of the amount of time she actually spent servicing calls.  Because an employer must keep records of the hours its employees actually work, it appears clear in this case that Defendant's records of Plaintiff's time spent answering pages while on call are inadequate within the meaning of the FLSA.

Since Defendant's records of Plaintiff's time spent working while on-call are inadequate, Plaintiff will satisfy her initial burden if she shows that she "in fact performed work for which [s]he was improperly compensated and if [s]he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Mt. Clemens Pottery Co.*, 328 U.S. at 687.  In support of her claims as to how often she answered after-hours pages and how long each call took to complete, Plaintiff points to her own deposition testimony and the affidavit of Plaintiff's

17

former office-mate, Vickey Todd.  Plaintiff claims that this evidence establishes as a matter of law that, on the low end, Plaintiff worked at least one hour per night; on the high end, she worked seven and a half hours per night; and on average, Plaintiff worked three hours per night answering pages while on call.

The court finds that there are genuine issues of material fact precluding summary judgment in favor of Plaintiff on this issue.  First, neither Plaintiff's deposition testimony nor Vickey Todd's affidavit establishes – even as a matter of just and reasonable inference or approximation – how often Plaintiff answered pages and how long each call lasted.  Plaintiff answers nearly every question concerning these issues with a variation of the response, "it depended on the call. " *See* Abdelkhaleq Dep., at 17, 26-27, 58.  Plaintiff provides only one example in which she describes how long a call took to complete.  In that example, Plaintiff claims that she was forced to spend over two hours dealing with a page while visiting her ill father because she was having trouble reaching the technician and eventually discovered that the technician was intoxicated.  (Abdelkhaleq Dep., at 28).  Plaintiff also appears to suggest, however, that she specifically remembered this call because it took over two hours to complete.  *See* id.  Thus, there is no reason to infer that this call was representative of the time Plaintiff typically spent dealing with customer calls after hours.

The court also finds it difficult to glean from Ms. Todd's affidavit any meaningful information about call duration and frequency.  Ms. Todd states in her affidavit that "the average call lasted approximately half a[n] hour to an hour before completion." (Vickey Todd Aff., at ¶ 4).  Ms. Todd later states, however, that she "worked many overtime hours just trying to get one call completed."  Id. at ¶ 7.  She then provides the following statement:

> By the time you got a hold of the on call technician through all hours of the night, got

> him to go to the job, answered 3 or 4 more pages from the customer asking where the tech was, (while getting another page from yet another customer with a problem) checked with the customer to make sure the tech was there, were they happy with the tech and the job he did, had everything correct in the computer (my own personal), and all the paperwork correct and complete, I figured I was making about .32 cents per hour overtime.

Id. Ms. Todd also states that she "would get anywhere from a couple calls per night to ten or more a night or during the day on the weekend." Id. at ¶ 4.  In two different paragraphs, Ms. Todd states that taking the pager on the weekends amounted to working twenty-four hours a day.  (Vickey Todd Aff., at ¶¶ 5, 8).  Ms. Todd's estimates in this affidavit are somewhat ambiguous and contradictory, and similarly to Plaintiff's deposition testimony, do not provide a sound basis from which the court may determine as a matter of just and reasonable inference the amount and extent to which Plaintiff worked answering calls after hours.

Moreover, the affidavits of Ms. Wright, Ms. Summerville, and Ms. Reynolds are sufficient to raise a genuine issue of fact about Plaintiff's assertions regarding call frequency and duration.  As noted above, these employees claim that they are able, respectively, to work at a second job, to care for an infant, and to go to evening classes, all while monitoring the pager.  (Wright Aff., at ¶ 7; Summerville Aff., at ¶ 7; Reynolds Aff., at ¶ 7).  These employees' statements about the variety of time- and labor-intensive activities in which they are able to engage while monitoring the pager raise significant questions about the number of calls typically received after-hours, as well as the length of time it typically takes to deal with those calls.  For example, it is difficult to imagine that a person would be able to work successfully at second job while having to spend an average of three hours – let alone seven and a half hours – each night tending to another job.  Thus, these affidavits provide sufficient grounds to challenge Plaintiff's assertions regarding call frequency and duration.

Defendant also submits as evidence in opposition to Plaintiff's assertions the affidavit of James Todd.  Mr. Todd states in his affidavit that he is related to Vickey Todd by marriage and has known Ms. Todd for many years. (Defendant's Exhibit 8 [hereinafter, "James Todd Aff."]).  The sworn statements in Mr. Todd's affidavit include the following: "I believe that any representations made by Vickey Todd concerning Akron Precision Door would be untrue;" "I have experienced first-hand that Vickey Todd is an habitual liar and her recollection of events concerning Akron Precision Door cannot be trusted;" and "I believe that Vickey Todd has a personal grudge against Akron Precision Door because of her termination from its employ." (James Todd Aff., at ¶¶ 3-6).  Plaintiff complains that Mr. Todd's affidavit is "entirely inappropriate" and "must be found to be submitted in bad faith" pursuant to Federal Rule of Civil Procedure 56(g) because it does not address any of the factual allegations contained within Ms. Todd's affidavit or reflect that Mr. Todd has any knowledge of Defendant's business or the facts of this case. (Doc. 36, at 3).  Plaintiff further claims that this Mr. Todd's affidavit merely constitutes "an attempt to disparage [Ms. Todd] by calling her a liar generally." Id.

Under Federal Rule of Civil Procedure 56(e), affidavits filed either in support of or in opposition to summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."  A statement as to what an affiant believes does not satisfy this requirement.  "Belief, no matter how sincere, is not equivalent to knowledge." *Avery v. Norfolk & W. Ry. Co.*, 52 F.R.D. 356 (N.D. Ohio 1971) (quoting *Jameson v. Jameson*, 176 F.2d 58, 60 (D.C. Cir. 1949) (internal punctuation omitted).  Plaintiff is correct that very little, if anything, in Mr. Todd's affidavit either indicates that he has personal knowledge of any of the factual allegations contained within Ms. Todd's affidavit or

20

addresses those allegations specifically.  Mr. Todd's affidavit amounts to little more than a general denial of Ms. Todd's allegations based solely on his opinion that she is a liar.  Such statements are insufficient to challenge a motion for summary judgment.  *See Little Mole Music v. Mavar's Supermarket No. 4, 1988 WL 167243 at *2-3 (N.D. Ohio Oct. 14, 1988)* (holding that the defendants' mere general denial of the allegations contained within the plaintiffs' affidavits was insufficient to raise an issue of fact in opposition to the plaintiffs' motion for summary judgment).

However, the court is not convinced that Mr. Todd's affidavit was submitted in bad faith within the meaning of Federal Rule of Civil Procedure 56(g).  Rule 56(g) provides: "[i]f satisfied that an affidavit under [Rule 56] is submitted in bad faith or solely for delay, the court must order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result." In the context of Rule 56(g), courts have found "bad faith" only "'where affidavits contained perjurious or blatantly false allegations or omitted facts concerning issues central to the resolution of the case.'" *See Sutton v. U.S. Small Bus. Admin., 92 Fed. Appx. 112, 118 (6th Cir. Dec. 4, 2003)* (quoting *Jaisan, Inc. v. Sullivan*, 178 F.R.D. 412, 415-16 (S.D.N.Y. 1998)). Awarding sanctions under Rule 56(g) is "rare" and the conduct involved generally must be "egregious." *See Jaisan, 178 F.R.D. at 415*.  Additionally, courts have not awarded sanctions under Rule 56(g) "where a litigant's actions, even though wrongful, did not affect the disposition of the summary judgment motion." *Id.*; *Sutton, 92 Fed. Appx. at 118*.

Although Mr. Todd's affidavit provides little in the way of a factual basis for his belief that Ms. Todd's allegations are untrue, Plaintiff does not allege or provide any evidence indicating that Mr. Todd's statements are as egregious as that contemplated by the language quoted above. Moreover, the court need not – and does not – rely upon Mr. Todd's affidavit in determining that

21

there are issues of material fact regarding call frequency and duration.  Accordingly, the court declines to award to Plaintiff any expenses or attorney's fees relating to Mr. Todd's affidavit.

Since there are issues of fact precluding the court from making a determination as to call frequency and duration, the court cannot determine at this juncture how much, if any, overtime compensation Defendant owes Plaintiff.  Accordingly, the court must DENY Plaintiff's motion for summary judgment on the issue on the issue of how much, if any, compensation Plaintiff deserves for time actually spent servicing calls after hours.

## IV.  CONCLUSION

For the foregoing reasons, the court DENIES Plaintiff's motion for summary judgment (doc. 28).  The parties are directed to comply with the dates listed in the forthcoming civil trial scheduling order.

IT IS SO ORDERED.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date: August 28, 2009.

22