UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CAROLYN ABDELKHALEQ, | ) | CASE NO. 5:07 CV 3585 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE McHARGH |
| vs. | ) | |
| | ) | |
| PRECISION DOOR OF AKRON, | ) | **OPINION AND ORDER** |
| | ) | **INCLUDING FINDINGS OF FACT** |
| | ) | **AND CONCLUSIONS OF LAW** |
| Defendant. | ) | **ON THE ISSUE OF LIABILITY** |

The Court conducted a bench trial in this matter on November 20, 2009. At trial, Plaintiff argued that she is entitled pursuant to the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. to unpaid overtime for all the time during her employment with Defendant that she spent "on-call," or in the alternative, that she is entitled for unpaid overtime for all the time she spent actually dealing with after-hours pages. Defendant disputed that Plaintiff is entitled to overtime pay for all her time spent "on-call" but has not specifically disputed that Plaintiff would be entitled to unpaid overtime for the time she spent actually dealing with after-hours pages. The Court now issues its findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure on the issue of whether Defendant is liable to Plaintiff for violations of the FLSA. These findings of fact and conclusions of law represent the Court's conclusions after consideration of all of the evidence in light of the pertinent law.[1]

---

[1] During a telephone conference following trial, counsel for the parties agreed to attempt to settle this matter. However, the Court received notice on December 2, 2009 that the parties' attempts at settlement had not been fruitful. The parties then submitted to the Court their

1

## I. FINDINGS OF FACT

Plaintiff began employment with Defendant in March 2005. Plaintiff's duties included handling calls and performing customer service for customers in various states including Ohio and Pennsylvania. At the beginning of her employment, Plaintiff earned $10.00 per hour. Plaintiff received a raise around July 2005, bringing her wages to $10.50 per hour. Plaintiff regularly worked a forty-hour week in the office.

Throughout Plaintiff's employment, Defendant used a roll-over call system to deal with customer inquiries after regular business hours and on weekends. Plaintiff testified that at the close of the work day, an office employee would call a number from Defendant's office, which would transfer all incoming calls to a paging system. When a customer called thereafter, the call would be forwarded to the paging company, and the paging company would transmit information from the call to a pager. Information from the incoming call included the customer's name, telephone number, and in some cases, the customer's address and/or a short description of the customer's issue. After receiving the page, the employee monitoring the pager would be required to return the customer's call. Defendant provided a cell phone for the employee monitoring the pager to use in handling customer's inquiries after-hours and on weekends. Often the customer's issue would require the employee to contact a technician to schedule an emergency repair for that night or the following day.

At some point during her employment, Plaintiff began to monitor the cell phone and pager after hours and on weekends. Plaintiff was paid at a flat rate of ten dollars per night for each weekday night and twenty-five dollars for each weekend day that she monitored the pager.

---

respective proposed findings of fact and conclusions of law on December 4, 2009.

Defendant terminated Plaintiff in March 2006. Plaintiff brought this lawsuit in November 2007, seeking overtime pay for hours worked in excess of forty per week during her employment with Defendant (Doc. 1). The parties consented to the jurisdiction of the Magistrate Judge in December 2008. (Doc. 23). Plaintiff filed a motion for summary judgment which the Court denied on August 28, 2009. (Doc. 28). Plaintiff withdrew her demand for a jury trial and a bench trial was held on November 20, 2009.

## II. CONCLUSIONS OF LAW

### A. "On-Call Time"

Plaintiff argued that she is entitled to unpaid overtime for all the time she spent monitoring the pager after-hours and on weekends. The FLSA provides that an employee must receive compensation at "not less than one and one-half times the regular rate at which he is paid" for hours worked in excess of forty per week. 29 U.S.C. § 207(a)(1). The FLSA does not specify whether time spent "on-call" constitutes time spent working, but the Supreme Court has held that such time is compensable in some cases. *See Armour & Co. v. Wantock*, 323 U.S. 126, 133, 65 S.Ct. 165 (1944); *Skidmore v. Swift & Co.*, 323 U.S. 134, 136, 65 S.Ct. 161 (1944). The Supreme Court declined to create a bright line rule in *Armour* and *Skidmore*; rather, it held in both those cases that whether or not time spent on-call constitutes working time depends on whether the employee's time is spent predominantly for the employer's benefit or for the employee's benefit, and the answer to this question depends on all the circumstances of the case.

Although the plaintiffs in *Armour* and *Skidmore* were required to spend their on-call time on their employers' premises, the Sixth Circuit has stated that "an employee may be entitled to compensation even though he or she is on call at home or elsewhere." *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 609 (6th Cir. 1992). The *Martin* court held that "on-call time spent at

3

home may be compensable if the restrictions imposed are so onerous as to prevent employees from effectively using the time for personal pursuits." *Id.* at 611. The fact that time spent on-call may have affected a plaintiff's ability to engage in some activities is not enough to establish that such time is compensable. *Id.* As suggested above, whether an employee is entitled to compensation for on-call time under the FLSA is a highly fact-specific inquiry.

Plaintiff argued that she entitled to unpaid overtime for all the time she spent on-call monitoring the pager because the restrictions placed on her while monitoring the pager were so onerous as to effectively preclude her from engaging in personal pursuits. Specifically, Plaintiff claimed that monitoring the pager required her to have the technicians' schedules available to her at all times, and that these schedules were only available on a computer program. She further claimed that monitoring the pager included the requirements that she answer pages within a very short time period; that she enter notes into the computer program at the conclusion of each call; that each call could take up to two hours to complete; that although it was difficult to determine an average, it took approximately forty-five minutes to complete each call from start to finish; and that she received an average of five to seven calls per night. Plaintiff claimed that because of these restrictions, not only could she not leave her home – thus precluding her from engaging in such activities as going to the movies and shopping – but also that she could not effectively engage in personal pursuits even *within* her home, such as cooking, helping her daughter with homework or having a glass of wine.

Defendant presented testimony from current employees that they are able to engage in a wide variety of personal pursuits while on-call, and that it takes only a couple of minutes to deal with each after hours page. Defendant's witnesses noted that they were not tied to their homes or any other particular place because the company provided a cell phone to handle these after-hours

4

customer inquiries. Defendant also presented testimony suggesting that employees need not enter notes into the computer program immediately after taking each call and that employees can print out a list of available technicians, thereby obviating the need to have the computer program available at all times.

In *Rutlin v. Prime Succession, Inc.*, 220 F.3d 737, 744 (6th Cir. 2000), the plaintiff, a funeral home employee, contended that he was expected to remain at home while on-call in order to answer phone calls that were forwarded from the funeral home to his house after-hours. The plaintiff claimed that he received approximately fifteen to twenty calls per night and that he spent an average of one hour per night dealing with these calls. *Id.* He argued that his time spent on-call was compensable under the FLSA because the on-call duties prevented him from drinking alcohol, visiting his children or boating, and because they disrupted his meals, evening activities, and sleep. However, the defendant argued – and the court agreed – that the plaintiff was free to use his on-call time for personal pursuits, despite the plaintiff's purported inability to engage in some activities while on-call. *Id.*

The Court finds, based on the above facts and law, that Plaintiff has failed to prove by a preponderance of the evidence that the restrictions imposed on her while monitoring the pager were so onerous as to prevent her from effectively using the time for personal pursuits. The testimony Plaintiff presented in support of her claim that she is entitled to compensation for her on-call time was not entirely credible; consisted largely of a couple of isolated anecdotes, estimates and vague assertions; and did not convincingly demonstrate that she effectively was "engaged to wait" for the entirety of every night and weekend that she carried the pager. The facts of this case are very much like those in *Rutlin*, where the court found that the plaintiff's on-call time was not compensable.

Additionally, the Court finds that Plaintiff's chosen methods of dealing with the service calls – rather than any mandate on the part of Defendant – may have contributed significantly to the time Plaintiff spent working while on-call.  For instance, Plaintiff testified that part of the process for dealing with after-hours pages included entering notes into a computer program regarding each call.  Plaintiff's testimony suggested that she was required to enter notes into the system from home, immediately after dealing with each call. However, Defendant presented testimony that employees are not required to enter notes into the computer system regarding the service calls taken after-hours until the following morning or another convenient time.  Plaintiff did not address this possibility at trial.  Plaintiff also testified that she needed to remain at home while on-call because she had to have access to the on-call technicians' schedules in order to deal with after-hours pages and that these schedules were available only a computer program. Plaintiff did not identify any other reason, besides the need to enter notes following each call, why it was necessary to have the computer program readily available while on-call.  However, Defendant presented testimony that an employee scheduled to monitor the pager could print before leaving the office a list showing the contact information for the on-call technicians who were scheduled for a particular night or weekend.  Having such a list presumably would eliminate any perceived need to have the computer program available at all times while on-call.  Plaintiff also failed to address this possibility at trial.  In light of Plaintiff's failure to consider these possibilities and Plaintiff's unconvincing testimony on the issue, the Court finds that Plaintiff has failed to show by a preponderance of the evidence that the restrictions placed on her were so onerous as to make all of her time spent on-call compensable.

### B.  Actual Time Spent Servicing Calls

Plaintiff argued in the alternative that she is entitled to unpaid overtime compensation for the

6

time she actually spent dealing with after-hours pages. "In an action to recover unpaid overtime compensation under the FLSA, the burden rests first on the plaintiff to prove by a preponderance of the evidence that (1) there exists an employer-employee relationship; (2) there was an engagement in activities within the coverage of the FLSA; and (3) the defendant failed to pay the plaintiff the overtime pay required by law." *Kowalski v. Kowalski Heat Transfer Co.*, 920 F.Supp.799, 806 (N.D. Ohio 1996).

Plaintiff testified that she was hired by Defendant in March 2005 and worked for Defendant until March 2006. Plaintiff also submitted evidence that she was an hourly employee. She further testified that her duties included handling customer service calls from customers in other states, including Pennsylvania. During some of these interstate calls, Plaintiff directly sold goods, such as overhead door openers, to customers. Defendant has not disputed Plaintiff's allegations with respect to these points and, in fact, has admitted that Plaintiff is a "covered" employee within the meaning of the FLSA. *See* doc. 1, at ¶ 3; doc. 19, at ¶ 3. Thus, the Court finds that Plaintiff has proven the first and second elements required to recover unpaid overtime compensation, as set forth above, by a preponderance of the evidence. *See e.g., Kowalski*, 920 F.Supp. at 802 (explaining that plaintiffs may gain protection by way of "individual coverage" under the FLSA where they themselves are engaged in interstate commerce).

The remaining question is whether Plaintiff has proven the third element – i.e., that Defendant failed to pay her the required overtime pay. As noted above, the FLSA provides that an employee must receive compensation at "not less than one and one-half times the regular rate at which he is paid" for hours worked in excess of forty per week. 29 U.S.C. § 207(a)(1). The parties do not dispute that Plaintiff regularly worked forty hours per week in the office. The parties also do not dispute that Plaintiff monitored the pager after-hours and on weekends at least some of the time

7

during her employment with Defendant. Significantly, several of Defendant's witnesses admitted at trial that time spent answering pages after-hours constituted "working" for Defendant. The parties also do not dispute that Plaintiff was not paid specifically at a rate of time and a half her normal rate of pay for the time she spent answering calls after-hours, but instead was paid a flat rate of ten dollars per weeknight and twenty-five dollars per weekend day that she monitored the pager. Defendant does not allege that any exceptions or exemptions that would take it or Plaintiff out of the purview of the FLSA apply in this case. Weighing all the testimony, the Court finds that Plaintiff has presented sufficient evidence to show that the ten dollars per night and twenty-five dollars per weekend day that she received for monitoring the pager did not properly compensate her at the required rate of one and a half times her normal rate of pay. Based on the above, including Plaintiff's testimony and the undisputed facts, the Court finds that Plaintiff has proven by a preponderance of the evidence that Defendant violated the FLSA.

### C. Damages

Having determined that Defendant violated the FLSA, the Court now turns to the question of damages. Plaintiff argues that she is entitled to a presumption that her testimony regarding the number of hours she spent dealing with pages while on-call is correct because Defendant has failed to produce any time records from Plaintiff's employment.

An employer is required to make, keep, and preserve records of the hours its employees work pursuant to Section 11 of the FLSA, 29 U.S.C.A. § 211(c). In *Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946)* (superceded by statute on other grounds), the Supreme Court outlined how to allocate properly the burden of proof regarding the number of hours an employee has worked in cases where an employer has not kept adequate records:

> [W]here the employer's records are inaccurate or inadequate . . . an employee has

>carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

It is undisputed that Defendant did not keep, or require Plaintiff to keep, time records related to the time she spent dealing with after-hours pages and calls. Thus, Defendant's records regarding the time that Plaintiff spent dealing with pages after-hours are inadequate within the meaning of the FLSA. Plaintiff has presented testimony that she carried the pager nearly every day, all but two or three weeks during her employment with Defendant. She also has presented testimony that, although it is difficult to determine an average, she received an average of five to seven calls per night and that each call took an average of forty-five minutes to complete. Plaintiff appears to argue that because Defendant did not produce any records at trial that the Court now must take at face value her testimony regarding the frequency and duration of after-hours pages and calls for purposes of calculating her damages. However, *both* parties have alluded to various records that may be probative of the number of days and/or the amount of time Plaintiff spent dealing with after-hours pages; that may call into question the reasonableness of Plaintiff's estimates; and that may help determine more accurately the amount of her damages. For instance, Plaintiff herself indicates in the Exhibit List included with her Trial Brief that "payroll records will show that she was improperly compensated for the hours she worked," and "[r]ecords of the Pager Company will show that [Plaintiff] received numerous calls per night and as many as ten or more on the same night." (Doc. 44, at 6) Defendant also indicates in its trial brief that payroll records "will indicate that the Plaintiff was not in possession of the pager for significant periods of time . . . " and telephone records "will

9

demonstrate that the Plaintiff received very few calls during her monitoring of the pager . . . . " (Doc. 43, at 11). Since the Court has been made aware – through the parties' own submissions and the various attempts to admit exhibits at trial – of the existence of records relating to these issues, the Court is unwilling at this point to credit without question Plaintiff's allegations regarding how much overtime she is owed.

Accordingly, the parties shall have until **December 30, 2009** to submit to the court a report indicating the amount of overtime pay Plaintiff is owed for her time spent dealing with pages after-hours and on weekends. As noted above, the parties have alluded to certain records that may be probative of Plaintiff's damages. In the reports, the parties will be afforded the opportunity to set forth their respective arguments related to the calculation of Plaintiff's damages; to use any records that may be probative of Plaintiff's damages to support their respective positions; and to demonstrate what such records are competent to show and why. The parties shall supply the Court with copies of any records used in connection with the reports.

IT IS SO ORDERED.

                                                      s/ Kenneth S. McHargh
                                                      Kenneth S. McHargh
                                                      United States Magistrate Judge

Date: <u>December 15, 2009.</u>