UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CAROLYN ABDELKHALEQ, | ) | CASE NO. 5:07 CV 3585 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE McHARGH |
| vs. | ) | |
| | ) | |
| | ) | |
| PRECISION DOOR OF AKRON, | ) | **OPINION AND ORDER** |
| | ) | **ON THE ISSUE OF DAMAGES** |
| Defendant. | ) | |

On December 15, 2009, the Court issued an Opinion and Order finding in favor of Plaintiff on the issue of liability. (Doc. 55). The Opinion and Order also directed the parties

> to submit to the court a report indicating the amount of overtime pay Plaintiff is owed for her time spent dealing with pages after-hours and on weekends . . . . In the reports the parties will be afforded the opportunity to set forth their respective arguments related to the calculation of Plaintiff's damages; to use any records that may be probative of Plaintiff's damages to support their respective positions; and to demonstrate what such records are competent to show and why.

(Doc. 55).

The parties timely filed their respective submissions. *See* doc. 59, 60. Although Defendant's damages report states that "[t]his report sets out the Defendant[ . . . ]'s position on the matter of damages," the report in fact sets forth no discernible position regarding the amount of Plaintiff's damages. *See* doc. 59. Plaintiff claims in her damages report that the amount of her damages can be calculated as follows:

$15.75        (Plaintiff's overtime rate, or $10.50 x 1.5)

.75        (Hours spent per call, or 45 minutes per call)

1

|   |   | 6 | (Average number of calls per day) |
|---|---|---|---|
|   |   | 7 | (Days per week Plaintiff carried the pager) |
| x |   | 35 | (Number of weeks Plaintiff carried the pager) |

      $17,364.38      (Amount of total overtime pay due to Plaintiff)

-    2,200.00      (Amount Defendant actually paid Plaintiff for carrying the pager, as reflected in the records provided)

      $15,164.38      (Plaintiff's lost overtime wages)

+ $15,164.38      (Equal amount in liquidated damages)

      $30,328.76      (Total amount of Plaintiff's damages)

(Doc. 60, at 5-6). Although the Court finds that many of the basic concepts in this calculation are sound, the Court takes issue with a number of the assumptions contained within it and addresses each of these below.

**A.    Number of Calls Per Day**

The Court finds based on the records and the testimony presented at trial that it is appropriate to reduce Plaintiff's proffered average of 6 calls per day to 5 calls per day. Plaintiff testified that she received an average of 5 to 7 calls per day when she monitored the pager. The pager records provided by the parties reflect that approximately 707 pages were received over a span of approximately 158 days. 707 divided by 158 is approximately 4.5. Since, as discussed more fully below, the pager records are to some extent incomplete, the Court find that it is

2

appropriate to credit Plaintiff's testimony to the extent that she claims she received an average of 5 calls per day.

**B.     Average Length of Call**

The Court cannot accept Plaintiff's average of 45 minutes per call.  Plaintiff argues that the Court must accept her testimony on this point because no records indicate how much time she spent on each call.   An employer is required to make, keep, and preserve records of the hours its employees work pursuant to Section 11 of the FLSA, 29 U.S.C.A. § 211(c). "Where the employer's records are inaccurate or inadequate . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of *just and reasonable inference*." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) (superceded by statute on other grounds) (emphasis added). Thus, although a plaintiff's burden is lessened where the employer's records are inaccurate or incomplete, the plaintiff still must show the amount of her work as a matter of just and reasonable inference.   The Court finds, based on the records and the testimony at trial regarding the process for handling calls and the type and amount of information that an employee typically needed to discover and convey back and forth between the customers and technicians, that an average of 45 minutes per call simply is not "just and reasonable." For instance, as Plaintiff notes and the pager records reflect, Plaintiff received 39 calls on September 5, 2005.  39 calls at 45 minutes per call amounts to 29.25 hours spent handling calls that day.  Obviously, such a result is not plausible.  The Court finds that a more just and reasonable inference to be drawn from the records and testimony is an average of 20 minutes per call.

C.   **Preliminary Calculation**

Based on these numbers, the Court now may set forth its starting point for calculating Plaintiff's damages. Since Plaintiff received an average of 5 calls per day at an average of 20 minutes (or, 0.33 hours) per call, then she spent an average of 1.65 hours handling calls each day that she monitored the pager. In weeks during which Plaintiff worked 40 regular hours and monitored the pager every day of the week, Plaintiff therefore would be entitled to a total of $181.91 in overtime pay. This amount is based on Plaintiff's overtime rate of $15.75 per hour. The $181.91 amount then must be reduced by the $100 amount that Defendant paid Plaintiff for a full week of monitoring the pager. Thus:

|   |   $15.75   | (Plaintiff's overtime rate, or $10.50 x 1.5) |
|---|---|---|
|   |   0.33   | (Hours spent per call, or 20 minutes per call) |
|   |   5   | (Average number of calls per day) |
| x |   7   | (Days per week Plaintiff carried the pager) |
|   |   $181.91   | (Amount of total overtime pay due to Plaintiff) |
| - |   100.00   | (Amount Defendant actually paid Plaintiff for carrying the pager) |
|   |   $81.91   | (Amount of lost overtime wages) |

D.   **Number of Days and Weeks Plaintiff Monitored the Pager**

However, the calculation set forth in the previous section does not end the Court's analysis. The Court next must determine how many days and weeks Plaintiff monitored the pager. Defendant claims that the records show that Plaintiff did not monitor the pager for twelve

4

full weeks during her employment with Defendant and that, during ten of the weeks Plaintiff *did* monitor the pager, Plaintiff did not monitor the pager for the entire week. Plaintiff claims that she monitored the pager all but approximately three weeks during her employment. However, Plaintiff acknowledged in her testimony that she sometimes did not monitor the pager for a full week, and that other employees occasionally monitored the pager. A review of the payroll records reflects that, during several weeks, no one is credited for monitoring the pager. Additionally, as Plaintiff notes, there are several weeks that appear to be unaccounted for in the pager records. These gaps in the pager records and payroll records correlate roughly with each other in time. For instance, no pager records were produced for the week of November 22, 2005 and the week of November 30, 2005, and the payroll records are silent as to who carried the pager during those weeks. The situation is the same for the five weeks between December 14, 2005 and January 17, 2006.

Defendant appears to claim that the records establish that Plaintiff did not carry the pager during these weeks and that, quite coincidentally, no calls at all were received during the same periods of time. No testimony concerning these gaps in time was presented at trial, and no party or witness has suggested that the pager was not in use for days or even weeks at a time. To the contrary, the testimony reflects that it was necessary – at all times after-hours and on weekends – for someone to monitor the pager. Furthermore, it is difficult to imagine, based on the volume of calls documented in the pager records that were produced, that no calls at all were received for solid weeks at a time. These gaps in the records – and their correlation in time with one another – trouble the Court and appear, moreover, to be precisely the type of situation with which the Supreme Court was concerned in *Anderson v. Mt. Clemons Pottery Co.* Under these

circumstances, the Court is unwilling to assume, as Defendant appears to suggest in its briefing, that no calls were received during these significant gaps in time because such an assumption is not warranted by the testimony from either party's witnesses or the bulk of the pager records. Thus, for these weeks – i.e., the weeks for which pager records were not produced and for which the payroll records are silent as to who monitored the pager – the Court will credit Plaintiff's testimony to the extent it means that she monitored the pager during those weeks.

However, for weeks where pager records do exist, the payroll records show that Plaintiff did not carry the pager for the full week, and/or the payroll records show that someone else monitored the pager, the same type of proof concerns described above are not present. Therefore, for these weeks, the Court will credit the documentation contained in the payroll records as it stands. Thus, if the payroll records for a particular week indicate that Plaintiff carried the pager for less than a full week, the Court will calculate Plaintiff's lost overtime wages, if any, based on the payroll records' documentation of the number of days she carried the pager that week. Similarly, if the payroll records indicate that someone else carried the pager during a particular week, the Court will not credit Plaintiff for carrying the pager, unless the payroll records credit her too for carrying the pager for a portion of that week, and only for the days that the payroll records document.

E.  **Set-Off for Amounts Paid to Plaintiff**

The conclusion reached in the above section calls into question another assumption at play in Plaintiff's calculation. Plaintiff's calculation only takes into account the amounts paid to Plaintiff that are actually reflected in the payroll records. Yet, nowhere in Plaintiff's briefing or testimony does Plaintiff ever suggest that Defendant sometimes failed to pay her the flat rate of

$10 per weeknight and $25 per weekend day that she monitored the pager, only that these amounts did not compensate adequately her for her time. Plaintiff testified that she monitored the pager all but approximately 3 weeks during her employment with Defendant, and that she was paid $10 per weeknight and $25 per weekend day for monitoring the pager. Thus, the Court will credit Plaintiff's testimony to the extent she admitted having been paid Defendant's flat rate for monitoring the pager, even where those amounts are not reflected in the payroll records. As Plaintiff claims, the records are somewhat "incomplete," and she cannot have it both ways.

F.  **Weeks During Which Plaintiff Worked Fewer Than 40 Regular Hours**

Plaintiff's calculation also does not account for weeks in which Plaintiff worked fewer than 40 hours. Although Plaintiff argues that the records are "incomplete," she does not allege that the records are incorrect with respect to the number of regular hours she worked in any given week. Furthermore, Plaintiff does not argue that she *always* worked a 40-hour week in the office, only that she regularly did so. The Court finds no reason to suspect that the payroll records are inaccurate with respect to this issue. Moreover, Plaintiff cannot claim that she is entitled to payment for overtime hours that she in fact did not work. Thus, where the payroll records reflect that Plaintiff worked less than 40 regular hours in a given week, the difference between 40 hours and the number of regular hours Plaintiff actually worked that week must be subtracted from the amount of time Plaintiff spent after hours monitoring the pager.

For example, the payroll records reflect that Plaintiff monitored the pager every day for the week of November 16, 2005 but that she only worked 29.5 regular hours that week in the office. Thus, 29.5 must be subtracted from 40 to get the difference that Plaintiff must make up in regular hours before she is entitled to overtime pay for that week. 40 minus 29.5 is 10.5. Thus,

for the week of November 16, 2005, Plaintiff is entitled to overtime pay for carrying the pager only to the extent she carried the pager in excess of 10.5 hours.  Since Plaintiff carried the pager every day that week, the Court finds that she worked 11.55 hours in that capacity, because 20 minutes multiplied by 5 calls multiplied by 7 days equals 11.55.  11.55 minus 10.5, or the difference between 40 hours and Plaintiff's regular hours actually worked, is 1.05.  Thus, Plaintiff would be entitled to 1.05 hours in overtime pay for carrying the pager that week, or $16.54.  However, because Plaintiff already received $100 for carrying the pager that week, as reflected in the payroll records, she is not entitled to any additional overtime pay for that week.[1]

By way of another example, the payroll records for the week of June 29, 2005 reflect that Plaintiff received $80 for monitoring the pager – indicating that she carried it only five days that week – and that she worked 38.45 regular hours in the office.  Thus, 38.45 must be subtracted from 40 to get the difference that Plaintiff must make up in regular hours before she is entitled to overtime pay for that week.  40 minus 38.45 is 1.55.  For the week of June 29, 2005, then, Plaintiff is entitled to overtime pay for carrying the pager only to the extent she carried the pager in excess of 1.55 hours.  The payroll records reflect that Plaintiff carried the pager 5 days that week.  Thus, the Court finds that Plaintiff worked a total of 8.25 hours in that capacity, because

---

[1] Although Defendant has not addressed the issue, the Court notes that any overtime "overpayment" Plaintiff happened to received during weeks such as this one – i.e., weeks in which Plaintiff received $100 for monitoring the pager for a full week but worked fewer than 40 regular hours, thereby entitling her to less than $100 in overtime pay for the week – should not be credited against the overall amount of her damages. *Accord Herman v. Fabri-Centers of America, Inc.*, 308 F.3d 580 (6th Cir. 2002) (finding that premium payments could be used only to offset the amount of overtime owed in the same workweek, not against the total amount of overtime owed, and noting that such a conclusion is in line with the legislative history of the FLSA, its implementing regulations and the case law, which emphasize the importance of making timely payments for overtime work).

20 minutes multiplied by 5 calls multiplied by 5 days equals 8.25.  8.25 minus 1.55 amounts to 6.7 overtime pager hours to which Plaintiff is entitled.  Therefore, Plaintiff would be entitled to $105.53 in overtime pay for that week, or the product of 6.7 and $15.75.  However, because Plaintiff already received $80 for carrying the pager that week, as reflected in the payroll records, she is entitled to only $25.53 for that week, or the difference between $105.53 and $80.

**G.    Amount of Plaintiff's Damages**

Based on the records, the testimony, and the above analysis, the Court concludes that Plaintiff is entitled to $1974.48 in lost overtime wages.  This number credits Plaintiff with $81.91 in lost overtime wages for each week during which Plaintiff worked 40 regular hours and monitored the pager for 7 days.  It reflects an adjustment in that number for weeks in which the payroll records indicate that Plaintiff did not work 40 regular hours and/or did not monitor the pager for the full week.  The figure also reflects a set-off for payments made to Plaintiff during weeks in which the Court credits Plaintiff with monitoring the pager because the payroll records are silent and pager records do not exist.

Plaintiff also claims liquidated damages in an amount equal to her lost overtime wages.  The FLSA provides that a plaintiff generally may receive liquidated damages in an amount equal to the plaintiff's actual damages.  29 U.S.C. § 216(b) ("Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation . . . and an in an additional equal amount as liquidated damages.").  The purpose of the liquidated damages provision is not to punish the employer, but rather to compensate the plaintiff for the losses he or she suffered by not being paid the appropriate wages in a timely manner.  *Viciedo v.*

*New Horizons Computer Learning Center of Columbus, Ltd.*, 246 F.Supp.2d 886, 905-06 (S.D. Ohio 2003) (citing *McClanahan v. Matthews*, 4404 F.2d 320, 322-23 (6th Cir. 1971), which recognized that liquidated damages under the FLSA "are compensation, not a penalty or punishment") (internal punctuation and citations omitted). However, liquidated damages are not 'automatic' under the FLSA; rather, a court may determine under appropriate circumstances that an award of liquidated damages is improper. The FLSA provides:

> [I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act or 1938, as amended, the court may, in its sound discretion award no liquidated damages . . . .

29 U.S.C. § 260. Under this provision, "an employer must demonstrate that its conduct was both in good faith and reasonable for the court to determine that liquidated damages are improper." *Viciedo*, 246 F.Supp.2d at 906 (citing *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968 (6th Cir. 1991)).

Defendant does not address the issue of liquidated damages in its briefing. Thus, Defendant has not convincingly demonstrated that its conduct was "both in good faith and reasonable" such that liquidated damages would be improper in this case. The Court further finds, based on the testimony that Defendant's witnesses presented at trial, that Defendant's conduct in devising the compensation scheme for monitoring the pager after hours and on weekends was not reasonable. According to Defendant's employee, Margo Smith, the pager compensation scheme derived primarily from employee "brainstorming." Defendant's owner/operator defended the scheme based on his assessment that monitoring the pager was voluntary and that all the employees in the office seemed happy with it. This testimony reflects

10

that the scheme was not reasonably calculated to comply with the FLSA. Accordingly, the Court finds that liquidated damages are appropriate in this case, and that the amount of Plaintiff's damages is therefore $3948.96.

**H.     Attorney's Fees**

Plaintiff claims that she is entitled to $34,112.60 in attorney's fees. Plaintiff derives this number by multiplying the 145.16 hours Plaintiff's attorney claims to have spent litigating this case by the hourly rate of $235.00. Defendant does not dispute Plaintiff's claimed amount of attorney's fees. (Doc. 59, at 3).

The FLSA provides that "[t]he court shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Thus, the award of an attorney's fee to any prevailing plaintiff is mandatory, but the amount is within the discretion of the judge. *Fegley v. Higgins*, 19 F.3d 1126, 1131 (6th Cir. 1994). The FLSA does not indicate what constitutes a reasonable attorney's fee; thus,

> The determination of a reasonable fee must be reached through an evaluation of a myriad of factors, all within the knowledge of the trial court, examined in light of the congressional policy underlying the substantive portions of the statute providing for the award of fees.

*Id.* (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.*, 732 F.2d 495, 501 (6th Cir. 1984)).

Generally, "[t]he first step in determining reasonable attorneys' fees is to multiply the number of hours reasonably expended on the case by a reasonable hourly rate." *West v. Hess Environmental Servs., Inc.*, 111 F.3d 132 (Table), 1997 WL 189507 at *2 (6th Cir. Apr. 17, 1997) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The result of this calculation,

11

called the "lodestar," constitutes "more than a mere 'rough guess' or initial approximation of the final award to be made." *Id.* (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986).  While there is a "strong presumption" in favor of the amount generated by way of the lodestar method, *id.*, the district court may adjust this figure as it "finds necessary under the circumstances of the particular case." *Moore v. Freeman,* 355 F.3d 558, 565 (6 th Cir. 2004).

Although the Court recognizes that it may not be appropriate to adjust an award based solely on certain factors,[2] the Court finds that in this case some adjustment is appropriate. Plaintiff claims approximately 15.5 hours in attorney time related to the motion to dismiss filed by former Defendant Precision Holdings of Brevard, Inc.  The Court granted that motion and Defendant Precision Holdings of Brevard, Inc. was terminated from the action.  The Court finds that it is inappropriate to require the other defendant in this case – Defendant Precision Door of

---

[2]For instance, the court should be wary of lowering an award of attorney's fees based on the amount of damages that the Plaintiff recovers.  As stated in *Fegley*,

> The purpose of the FLSA attorney fees provision is to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances.  Courts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees here encourages the vindication of congressionally identified policies and rights.  Indeed, we have upheld substantial awards of attorney's fees even though a plaintiff recovered only nominal damages.

19 F.3d at 1134-35 (internal punctuation and citations omitted).

The Sixth Circuit also has held that attorney's fees "should not be reduced by the ratio of successful claims to claims overall." *Moore*, 355 F.3d at 566 (citing *Phelan v. Bell*, 8 F.3d 369, 374 (6th Cir. 1993)).  Since plaintiff's often raise alternative grounds for relief, they should not be penalized merely because some of those claims do not prevail. *Id.* at 565-66 (citing *Hensley,* 461 U.S. at 435 n. 11).

Akron – to pay attorney fees for work that in no way concerned it.  Thus, the Court deducts from Plaintiff's award of attorney's fees the amount of $3642.50, or 15.5 hours at $235 per hour.  The Court finds no reason to deduct other hours from Plaintiff's claimed amount or to reduce her attorney's claimed hourly rate.  Thus, the Court finds that Plaintiff is entitled to $30,470.10 in attorney's fees.

I.      Conclusion

The Court orders Defendant to pay to Plaintiff $3948.96 in damages, which represents $1974.48 in lost overtime compensation and an equal amount in liquidated damages.  The Court further orders Defendant to pay Plaintiff $30,470.10 in attorney's fees.

IT IS SO ORDERED.

s/ Kenneth S. McHargh  
Kenneth S. McHargh  
United States Magistrate Judge

Date: January 25, 2010.